**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**


ROBERT HARDIN                                                PLAINTIFF

V.                                                   NO. 3:02CV-443-C

WILLIAM S. CARCARA, et al.                                  DEFENDANTS


<u>**MEMORANDUM OPINION**</u>

Mr. Hardin has filed suit against the defendants pursuant to 28 U.S.C. § 1983.   The

lawsuit stems from Mr. Hardin's arrest on drug charges and the Commonwealth's subsequent

dismissal of the charges.  The charges were dismissed, in part, because Mr. Hardin was one of

many persons arrested by former Detective Mark Watson, who is now serving time in jail for his

unlawful activities related to several improper arrests.  Among other things, Detective Watson

falsified affidavits and forged arrest warrants.

Mr. Hardin has now filed a motion to compel Mark Watson to identify the informant

used in the criminal investigation and prosecution of him and to answer certain questions posed

to him during his depositions.  Both Detective Watson and the metropolitan police department

have objected to the disclosure of the informant's identity because of the informant privilege

recognized by Kentucky law.  Detective Watson specifically has objected to disclosing the

informant's identity because doing so might subject him to future criminal liability.  Detective

Watson also refused to answer the questions posed to him in his deposition because he believed

that his answers might incriminate him in future criminal proceedings.

## I.

With respect to the informant privilege issue, the magistrate judge concludes that the exceptionally unusual circumstances presented by this case warrant disregarding the privilege to some extent.  Detective Watson, the officer who investigated the crimes with which Mr. Hardin was later charged, was an unscrupulous police officer who habitually lied, stole, and falsified official documents.  He is currently a guest of the Commonwealth for his wrongdoing (specifically, bribing a witness, committing burglary in the second degree, committing the crime of criminal possession of a forged instrument in the second degree, committing perjury in the first degree, tampering with public records, and committing theft by deception of an amount greater than three hundred dollars).

Part of the investigation and prosecution of Mr. Hardin involved the testimony of an informant who allegedly witnessed Mr. Hardin using illegal drugs.  During the course of the investigation and prosecution, Detective Watson identified this informant by the code name "John Holmes."[1]  Detective Watson used the same code name for several informants, however, and the John Holmes to which he referred during the prosecution of Mr. Hardin was not the police department's "John Holmes" of official record.  Records submitted to the magistrate judge under seal for *in camera* review reveal that the official police informant "John Holmes" had nothing to do with the investigation prosecution of Mr. Hardin.  Indeed, until the court began to analyze the issues presented by Mr. Hardin's motion to compel, the metropolitan defendants did not know who the "John Holmes" at issue here was.  Once informed, counsel for the metropolitan police department reviewed his client's files and determined that there are no

---

[1]Although not particularly important, this name was an apparent attempt at weak humor, as John Holmes was the name of a male "actor" in the movie *Deep Throat*.  That movie title was the nickname for the informant in the Watergate investigation by THE WASHINGTON POST.

records or other available information indicating that the informant at issue in this case had ever been used in any other case before or since the prosecution of Mr. Hardin. Thus, it does not appear that disclosure of the informant's identity would have any impact on past, ongoing or future investigations.

The fact that the informant was used one time only, with no apparent prospects of future use, does not automatically tip the scales in favor of disclosure. There are other important considerations. The policy underlying the establishment of the privilege is a wise one. If informants did not have some reasonable certainty that their identities would not generally be disclosed, they would be loathe to assist the police out of understandable concerns for their own safety, and the use of confidential informants is valuable tool for law enforcement. In addition, the disclosure of the identity of an informant can lead to violence or other forms of retaliation. Thus, courts should not require that an informant be identified, except in extremely rare circumstances where the policy considerations underlying the privilege are less important than preserving justice. The court believes that this is one such circumstance.

As noted above, Mr. Hardin was prosecuted for drug related crimes on the basis of a confidential informant's allegations that the informant saw Mr. Hardin using illegal drugs. Once the full extent of Detective Watson's malfeasance was revealed, the Commonwealth dismissed the charges against Mr. Hardin. Perhaps this decision was made because the Commonwealth was concerned that the taint associated with Detective Watson would preclude a successful prosecution, no matter how just or factually sound. On the other hand, the Commonwealth may have discovered that Detective Watson's prosecution of Mr. Hardin was not factually sound. The magistrate judge does not know. What the magistrate judge does know is that Mr. Hardin's counsel has represented to the court that, on the night the informant allegedly witnessed the drug use, Mr. Hardin was taken to the hospital for a heart condition. Blood tests performed that night

supposedly revealed no evidence of illegal drugs in his system, however.  Given those representations, and the fact that it appears equally likely as not that the Commonwealth may have discovered that the prosecution of Mr. Hardin was not factually sound, the magistrate judge cannot say that Mr. Hardin's claims of improper prosecution are specious. (The magistrate judge expresses no opinion regarding whether they ultimately will be successful.)  He therefore deserves the opportunity to litigate them effectively.

Mr. Hardin cannot fully or effectively prosecute his claims without the identity of the informant being revealed, at least to his counsel.  The Commonwealth's case against him, as the magistrate judge understands it, consisted almost entirely of the confidential informant's allegations, which Detective Watson presented to the prosecution in the form of an affidavit that he himself signed.  Detective Watson maintains that the prosecution was factually sound and the metropolitan police department has not conceded that it was not.  Thus, without the opportunity to question the informant, Mr. Hardin may not be able to vindicate the alleged violation of his constitutional rights.  Consequently, on balance, the magistrate judge concludes that the informant's name should be revealed.

The magistrate judge is aware that Detective Watson has expressed concern regarding his potential for self-incrimination if he reveals the identity of the informant.  The court does not find Detective Watson's assertion of the Fifth Amendment privilege to be well taken, however.  First, Detective Watson has already identified the informant to counsel for his codefendants (albeit pursuant to court order).  More importantly, as the Sixth Circuit has noted in Morganroth v. Fitzsimmons, 718 F.2d 161, 169 (1983), one asserting the privilege must have a "reasonable fear of prosecution" for the assertion of privilege to be valid.  The types of wrongdoing that would have, if committed in the investigation of Mr. Hardin, resulted in a factually unsound prosecution of him, are the precise crimes for which Detective Watson is now imprisoned.  The

-4-

court recognizes that, the Commonwealth might be able prosecute Detective Watson for any crimes committed specifically in relation to the prosecution of Mr. Hardin, but this abstract possibility is too remote to reasonably be feared. First of all, Detective Watson was given transactional immunity by the Commonwealth. His plea agreement notes the Commonwealth's agreement not to prosecute him for the types of crimes identified in the original indictment (other than those for which he was indicted). Accordingly, there is a serious question as to whether he is immune from any prosecution for whatever wrongdoing he may have committed in the prosecution of Mr. Hardin.

Even absent the transactional immunity, however, the Commonwealth has already made its case against Detective Watson and won. He is being punished for his past crimes, even if he was only prosecuted for a select, presumably prosecution-favorable few. It is therefore unreasonable to expect that the Commonwealth will in the future spend precious resources and limited time prosecuting Detective Watson. There is no assertion in the record of any active investigation of Watson. The magistrate judge therefore concludes that Detective Watson does not have a reasonable fear of prosecution if he reveals the identity of the informant used in the prosecution of Mr. Hardin, and, consequently, that his assertion of his Fifth Amendment privilege should pose no impediment to revealing the informant's identity.

Given who the informant is, however, the magistrate judge has substantial concerns for the informant's safety once the name is made known. For this reason, the order accompanying this motion will direct that the informant's name be revealed only to Mr. Hardin's counsel of record, who may not share the information with his client, or anyone else not essential for the taking of this person's deposition, absent leave of court. Mr. Hardin's counsel will also be directed not to take any actions that would allow Mr. Hardin to ascertain the identity of the informant. This may present some difficulties, but the alternatives of either no disclosure, or full

disclosure, appear even more troublesome.

## II.

The magistrate judge must now evaluate the second component of Mr. Hardin's motion to compel and determine whether he should be forced to answer certain questions posed to him during his depositions.  The specific[2] questions Detective Watson refused to answer are:

1.   Who else in the police department besides yourself has ever executed a search warrant before the affidavit was actually signed by a judicial officer?

2.   Who were the commanding officers in the police department that were aware that law enforcement officers in the department were executing search warrants before the affidavits were actually signed by judicial officers?

3.   Did anyone else in the police department (and, if so, who?) ever forge a judicial signature?

4.   Did you ever see a police officer use or re-sell for personal gain narcotics that had been seized by law enforcement?

5.   Were your supervisors aware that you were using more than one informant with the same pseudonym?

6.   Were your supervisors aware of these violations at the time this event[3] occurred?

7.   Who else besides yourself had ever done that?

8.   Did you witness improper or illegal activities of other officers?

9.   Were there certain unwritten customs of Metro Narcotics that everyone followed (and knew that they were supposed to be followed) that weren't written down?

10.  Did any other officers employ that similar tactic[4] with regard to informants?

---

[2]The questions are restated to include contextual information that, if excluded, would in many instances render the precise question meaningless.

[3]Presumably, the arrest of Mr. Hardin.

[4]It is unclear from the question whether, in referring to a "similar tactic" the questioner was referring to Detective Watson's admitted and unofficial practice of using the same code name for more than one informant.  Given the court's discussions with counsel, however, the court is fairly confident in presuming that was indeed the subject of the question.

11.    Where did you learn to create dummy files (regarding informants)?

12.    Was it uncommon for other officers to list an informant as doing a particular activity when, in fact, it was another informer that did that activity?

Generally speaking, each of the above questions pertains to one of three general areas of inquiry[5] designed to answer one question: were Detective Watson's improper and illegal acts knowingly tolerated or sanctioned by his police department?

During his depositions, Detective Watson and his counsel asserted his Fifth Amendment privilege and refused to answer the questions described above.  The privilege assertions were made without specificity (*i.e.,* without any identification of the specific crimes for which the answers might subject him to prosecution), which is insufficient.  That issue aside, however, the assertion of the privilege is not well taken.

For the reasons discussed above, Detective Watson does not have a reasonable fear of prosecution by the Commonwealth. In response to Mr. Hardin's motion to compel, however, he asserts that his answers might subject him to potential liability for conspiracy crimes, in particular the federal Racketeer Influenced and Corrupt Organizations Act.  While the magistrate judge would never presume to speak for the Executive Branch of the federal government, he nevertheless concludes that a federal prosecution of Detective Watson is theoretically possible, but highly unlikely.  If the United States Attorney's office were going to prosecute Detective Watson, they likely would have indicted him by now.  He has been in prison for over two years, and the United States Attorney's Office is nothing if not swift in its efforts to bring to federal justice those it believes are guilty of violating this nation's laws.  Consequently, the magistrate

---

[5]Those three general areas are: (1) whether there were any other local law enforcement officers who unlawfully created or used invalid search warrants; (2) whether there were any other local law enforcement officers who improperly kept or falsified files with respect to confidential informants; and (3) whether any of the commanding officers in the police department knew about these practices.

judge concludes that Detective Watson does not have a reasonable fear of federal or state prosecution, even with the use of "inference or Judicial imagination." <u>Morganroth</u>, 718 F.2d at 169.  The magistrate judge will therefore issue an order directing Detective Watson to answer the questions identified above, and any limited, and narrowly-tailored follow up questions that may be necessary.[6]

      DATE:

cc:    counsel of record

---

[6]For example, Detective Watson could simply answer "yes" in response to the question, "Were any of your supervisors aware that you were using more than one informant with the same pseudonym?"  An appropriate, permissible follow up question would be, "what are the names of those supervisors?"  As a general rule, any limited follow up questions should be tailored to provide information necessary to determine whether the improper police procedures (some improper but lawful, some illegal) used by Detective Watson were sanctioned or tolerated.